UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Criminal Action No. 5:19-cr-66-GFVT-CJS |
| | ) Civil Action No. 5:20-cv-235-GFVT-CJS |
| v. | ) |
| ALDIE PENMAN, | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Aldie Penman's *pro se* 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (R. 34). The United States filed a Response to Penman's § 2255 Motion. (R. 50). Penman did not file a reply. Pursuant to local practice, this matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b). For the reasons stated below, it will be recommended that Penman's § 2255 Motion **be denied**.

**I.    FACTUAL AND PROCEDURAL HISTORY**

On March 21, 2019, a grand jury returned an Indictment charging Penman, a convicted felon, of knowingly possessing a firearm in violation of 18 U.S.C. § 922(g)(l). (R. 1 at Page ID 1). On April 24, 2019, Penman accepted the Plea Agreement offered by the United States. (R. 19 at Page ID 51). The Agreement set forth the following facts: 1) Lexington, Kentucky police officers observed Penman toss a loaded firearm under a vehicle; 2) officers recovered the firearm and Penman admitted that he "possessed and tossed the firearm"; 3) Penman admitted "the firearm had crossed state lines prior to his possession of" it; and 4) Penman was prohibited from possessing a firearm because he had prior state felony convictions in June 2005, February 2016, and May 2016.

(R. 19 at Page ID 47). The Agreement also stated that Penman faced imprisonment of not more than ten years followed by a maximum of three years of supervision following his release. (*Id.*). The parties agreed that, under the Sentencing Guidelines, Penman had committed a base level 24 offense and that the United States would recommend a two-level decrease for acceptance of responsibility and, if appropriate, an additional one-level decrease for Penman's "timely notice of intent to plead guilty." (*Id.* at Page ID 48). Penman agreed to waive "the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, [Penman] also waive[d] the right to attack collaterally the guilty plea, conviction, and sentence." (*Id.* at Page ID 49).

On June 10, 2019, a rearraignment hearing was conducted during which Penman pleaded guilty to violating 18 U.S.C. § 922(g)(l), a plea the Court found to be knowingly, intelligently, and competently made. (R. 20). During the hearing, and pertinent to this § 2255 Motion, Penman admitted that "I was in possession of a .22 handgun, and I tried to toss it and get rid of it. I knew I was a felon." When the Court asked if he knew he was not supposed to have the handgun, he stated, "Right." (R. 43 at Page ID 191-92).

Following entry of Penman's guilty plea, the Eastern District U.S. Probation Office prepared a Presentence Investigation Report, which Report indicated a term of imprisonment of 77 to 96 months was recommended under the Sentencing Guidelines, followed by 1 to 3 years of post-release supervision. During the subsequent sentencing hearing, Penman agreed that he had read and understood the Presentence Investigation Report and had no objections to it. (R. 44 at Page ID 198). The United States noted Penman's lengthy criminal history and recommended a sentence in the range of 86 to 90 months be imposed. (*Id.* at Page ID 209). Penman's counsel argued that Penman's primary problems were related to mental illness and drug use and

2

emphasized Penman's acceptance of responsibility and participation in a rehabilitation program while in jail pending sentencing. (*Id.* at Page ID 209-12). Counsel also asked the Court to include a period of community confinement at the end of Penman's traditional incarceration so that he could develop the necessary relationships within the community to obtain and continue treatment and rehabilitation upon discharge. (*Id.* at Page ID 212-14). After a lengthy discussion regarding how to ensure Penman received appropriate treatment and rehabilitation, the Court sentenced him to 72 months of incarceration with 3 years of supervised release to follow, the first 6 months of which to be spent in community confinement. (R. 28 at Page ID 74, 76 at ¶ 11 (Special Conditions of Supervision); R. 44 at Page ID 214-19, 229-30).[1] The Court then presented Penman with a written copy of his appeal rights, which he signed. (*Id.* at Page ID 234-35). Penman did not file an appeal.

On June 2, 2020, Penman filed this § 2255 Motion setting forth two grounds for relief: 1) "Ineffective assistance of counsel failure to file notice of appeal from final judgment"; and 2) "Lack of subject matter jurisdiction in light of *Rehaif*."[2] (R. 34 at Page ID 102, 103). In his supporting memorandum, Penman states that his attorney, Joyce Merritt, failed to perfect his requested notice of appeal and did not consult with him after sentencing concerning an appeal. (R. 34-1 at Page ID 117). According to Penman, "[a]ny rational person would want to appeal a sentence they felt was unwarranted, as the Petitioner is no different[,]" and Attorney Merritt's alleged deficiencies deprived him of his appeal. (*Id.* at Page ID 123).

---

[1] As discussed at the sentencing hearing, Penman will likely be referred for community confinement (halfway house) by the Bureau of Prisons approximately 6 months prior to the end of his 72-month incarceration. (R. 44 at Page ID 213-19). Therefore, once Penman completes his entire term of incarceration and is "released" by the Bureau of Prisons to begin his 3-year term of supervised release, he will also spend the first 6 months of that 3-year supervision term in community confinement (halfway house), ultimately resulting in approximately 12 months of community confinement.

[2] *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019).

3

As to his second ground, Penman argues that an indictment must allege all of the elements of an offense in order to confer jurisdiction on a district court. (R. 34-1 at Page ID 126). As Penman notes, in *Rehaif v. United States,* 139 S. Ct. 2191 (2019), the Supreme Court held that, in order to obtain a conviction under 18 U.S.C. § 922(g)(l), the United States is required to prove that a defendant not only knowingly possessed a firearm but that he also knew he had "the relevant status when he possessed it." *Rehaif*, 139 S. Ct. at 2194. Penman's Indictment stated that Penman knowingly possessed a firearm "in and affecting commerce"; however, it did not state that he knew he was a felon at the time of that possession. (R. 1). Penman argues that *Rehaif* clarified that knowledge of status is an element of 18 U.S.C. § 922(g)(1) and this Court lacked jurisdiction over this case because of the Indictment's failure to include that necessary element. (R. 34-1 at Page ID 127-32). Therefore, Penman asks the Court to dismiss the Indictment. (*Id.* at Page ID 133).

Because Penman's § 2255 Motion lacked a factual basis to support ground one, an Order was issued requiring Penman to "make an additional filing . . . providing further factual support for ground one of his § 2255 motion." (R. 37 at Page ID 146, 147). In response to that Order, Penman filed a Statement of Facts, which essentially reiterated his legal arguments, and an Affidavit. (R. 38). In his Affidavit, Penman states:

> On October 16, 2019 . . . the day of my sentencing, while I was [waiting] in the holding cell[,] my attorney Joyce Merritt came and had a brief talk with me. She told me that I was being sentenced in my guidelines 77-99 months, that I had a pretty good Judge[,] and that I should get the low end[,] 77 months, most of that time . . . to be served Community Confinement. I told her that sounds good[,] I would be satisfied with that decision. She told me that if for some reason something changes we could appeal the decision. I told her to appeal any decision other than the decision she had planned for me. She said that she would. I left the Courtroom and never heard from my Attorney . . . again. She failed to file my appeal.

(R 38-1 at Page ID 152).

The United States filed a Response to Penman's § 2255 Motion and related filings, arguing that the Indictment's failure to include the fact that Penman knew he fell within a class of persons prohibited from having a firearm did not deprive this Court of jurisdiction. (R. 50 at Page ID 290-91). As to Penman's ineffective assistance of counsel claim, the United States admits that "'the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment.' *Campbell v. United States,* 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998))." (*Id.* at Page ID 293). However, based on Attorney Merritt's Affidavit, the United States argues that, despite being advised regarding his appeal rights, Penman never asked Attorney Merritt to file an appeal. (R. 50 at Page ID 293-95). Therefore, the United States asks that Penman's § 2255 Motion be denied. (*Id.* at Page ID 296).

Additional facts will be set forth as necessary below. Because Penman's jurisdictional issue underlies the ineffective assistance of counsel, it will be addressed first.

## II.  ANALYSIS

### A.  Jurisdiction

As noted above, Penman argues that because the Indictment did not contain all of the elements of the charged crime, it was fatally flawed, and therefore this Court lacked jurisdiction to adjudicate his case. (R. 34-1 at Page ID 131-32).

> To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-638, 113 S. Ct. 1710, 1721-1722, 123 L.Ed.2d 353 (1993). To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

5

*Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Penman does not meet either of the preceding standards from *Watson*.

As noted above, in *Rehaif*, the Supreme Court held that the United States must prove a defendant knew he had the relevant status when he possessed a firearm. *Rehaif,* 139 S. Ct. at 2194. Penman argues that this relevant status knowledge is an element of 18 U.S.C. § 922 that must be set forth in an indictment to give a district court jurisdiction to adjudicate a violation of that statute. (R. 34-1 at Page ID 124). Based on the Sixth Circuit's decisions in *United States v. Hobbs,* 953 F.3d 853 (6th Cir. 2020), which was issued two and a half months before Penman filed his § 2255 Motion, and *United States v. Watson*, 820 F. App'x 397 (6th Cir. 2020), which was issued fifteen days after Penman filed his § 2255 Motion, this argument is without merit.

Hobbs and Watson, like Penman, were indicted, in pertinent part, for being felons in possession of a firearm. *Hobbs*, 953 F.3d at 855; *Watson,* 820 F. App'x at 398. Their indictments, like Penman's, specified that they had previously been convicted of felonies and knowingly possessed firearms but failed to state that they knew they were felons. *Hobbs,* 953 F.3d at 856; *Watson*, 820 F. App'x at 398. Like Penman, both Hobbs and Watson pleaded guilty to the firearms charge shortly before the Supreme Court rendered *Rehaif. Hobbs,* 953 F.3d at 855; *Watson*, 820 F. App'x at 398. Finally, like Penman, Hobbs and Watson, citing *Rehaif,* filed § 2255 motions challenging the court's jurisdiction. *Hobbs*, 953 F.3d at 856; *Watson,* 820 F. App'x at 398.[3]

In *Hobbs,* the Sixth Circuit noted that the United States Supreme Court had rejected a similar jurisdictional claim in a case involving the failure of an indictment "to charge a sentence-enhancing drug quantity." *Hobbs,* 953 F.3d at 856 (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). As noted by the Sixth Circuit, the Supreme Court held in that case "that defects in

---

[3] Both Hobbs and Watson raised other issues, which other issues are not pertinent to this matter.

an indictment do not deprive a court of its power to adjudicate a case." *Cotton,* 535 U.S. at 630. The Sixth Circuit went on to hold that nothing in *Cotton* "purported to limit its reasoning" to its specific facts; rather, *Cotton* "broadly rejected 'the view that indictment omissions deprive a court of jurisdiction.'" *Hobbs,* 953 F.3d at 856 (citing *Cotton*, 535 U.S. at 631).

In *Watson,* the Sixth Circuit noted that "[t]he Supreme Court has repeatedly clarified in recent decades that the word 'jurisdiction' has a narrow domain, referring to the courts' statutory or constitutional power to adjudicate [a] case." *Watson,* 820 F. App'x at 399 (citing *Cotton*, 535 U.S. at 630). The power to adjudicate a case "instead arises from a federal statute that gives district courts jurisdiction over 'all offenses against the laws of the United States.'" *Id.* (citing 18 U.S.C. § 3231).

Based on the preceding reasoning, the Sixth Circuit held in both *Hobbs* and *Watson* that the failure to include knowledge of status language in the indictments did not deprive the district court of jurisdiction. *Hobbs,* 953 F.3d at 857; *Watson,* 820 F. App'x at 399. Penman has not provided any authority to the contrary in his § 2255 Motion and chose not to file a reply to the Government's Response to his Motion, which Response cited both *Watson* and *Hobbs.* Therefore, it will be recommended that his request to have his Indictment dismissed be denied based on *Hobbs* and *Watson*.

Although *Hobbs* and *Watson* dispose of Penman's jurisdiction claim, additional facts should be noted. First, Penman does not dispute that he had the requisite knowledge of status. In fact, he admitted that he knew he was a felon and was prohibited from having a gun to the Court, to his attorney, and to the arresting officers. (R. 43 at Page ID 191-92; R. 50-1 at Page ID 298). Therefore, had this matter gone to trial, his conviction was assured.

Second, Penman's reliance on *United States v. Yousef*, 750 F.3d 254 (2d Cir. 2014), and *United States v. Bastian*, 770 F.3d 212 (2d Cir. 2014), is misplaced. Yousef ran an arms-trafficking operation and was charged with "conspiring to provide material support to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B." *Yousef,* 750 F.3d at 256. Yousef moved to have the indictment dismissed because it did not state that his activities had "any 'effect on the United States or United States nationals.'" *Id.* at 257. The appellate court held that this omission from the indictment did not deprive the district court of jurisdiction, noting that "[d]efects in an indictment short of a failure to charge all of the statutory elements do not undermine subject-matter jurisdiction, and do not implicate the power of the federal courts to decide a case." *Id.* at 259. As the appellate court noted, a territorial nexus was not a statutory element of the crime; therefore, its presence in the indictment was not necessary to establish jurisdiction.

Just as territorial nexus was not a statutory element of the crime in *Yousef,* knowledge that one is a felon is not a statutory element of 18 U.S.C. § 922(g). Therefore, even absent *Hobbs* and *Watson*, the reasoning in *Yousef* would negate Penman's argument.

*Bastian* is even less helpful to Penman because it is not on point. Bastian pleaded guilty to conspiring to distribute crack and to being in possession of a firearm in connection with drug trafficking. *Bastian,* 770 F.3d at 215. The indictment stated that Bastian was in possession of a shotgun; however, he pled guilty to being in possession of a handgun. *Id.* at 217. Therefore, the issue was not whether the indictment failed to allege an element of the crime, *i.e.,* possession of a firearm, but whether the indictment was constructively amended in the plea agreement, *i.e.,* by changing the identity of the firearm, thereby depriving Bastian of his right to an amended indictment. *Id.* at 217-18.

Penman pleaded guilty to the charge set forth in the Indictment. There is no issue with regard to amending the Indictment, either formally or constructively. Therefore, *Bastian* has no application. Furthermore, the court in *Bastian* stated, as did the courts in *Yousef, Hobbs,* and *Watson,* that a defect in an indictment only impacts a court's jurisdiction if that defect results in the failure to charge a federal crime. *Bastian,* 770 F.3d at 217. The Indictment herein did charge a federal crime, violation of 18 U.S.C. § 922(g); therefore, *Bastian,* to the extent it is relevant, supports the United States, not Penman.

For the foregoing reasons, ground two of Penman's § 2255 Motion is without merit, and it will be recommended that he be denied the relief he seeks under that ground.

    **B.**    **Ineffective Assistance of Counsel**

In Penman's other ground, he argues that Attorney Merritt failed to file a notice of appeal after he asked her to do so. (R. 38-1 at Page ID 152). "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000). Furthermore, "a lawyer's failure to appeal a judgment, in disregard of the defendant's request, is ineffective assistance of counsel regardless of whether the appeal would have been successful or not." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Therefore, the question before the Court is whether Penman asked Attorney Merritt to file an appeal from the judgment. Based on the record, he did not.

Penman states in his Affidavit that, prior to the sentencing hearing, Attorney Merritt advised him that he faced "77-96 months, . . . and that [he] should get the low end 77 months, most of that time is to be served Community Confinement." (R. 38-1 at Page ID 152). He told Attorney Merritt "that sounds good," and he "would be satisfied with that decision." (*Id.*). However, he "told [Attorney Merritt] to appeal any decision other than the decision she had planned for [him].

9

She said that she would." (*Id.*). According to Penman, he did not hear from Attorney Merritt after the sentencing hearing. (*Id.*).

Attorney Merritt, on the other hand, states in her Affidavit that she discussed possible sentencing options with Penman before he entered into the Plea Agreement, prior to the rearraignment hearing, after receipt of the Presentence Investigation Report, prior to the sentencing hearing, and after the sentencing hearing. (R. 50-1 at Page ID 298-301). According to Attorney Merritt, she advised Penman that, under the Sentencing Guidelines, he faced a minimum of 77 months of imprisonment, and Penman stated that "he did not want to appeal if the sentence was 77 months or less." (*Id.* at Page ID 301-02). Following the sentencing hearing, Attorney Merritt sent Penman a letter enclosing the Judgment and conditions of supervised release. (R. 50-1 at Page ID 305). In that letter, Attorney Merritt stated, "I will not file an appeal unless you advise me otherwise during the next 13 days from the date of this letter. Please further review your notice of appeal rights provided to you in court regarding your rights in this regard." (*Id.*). Attorney Merritt states that she did not hear anything from Penman in response to this letter and; therefore, she did not file an appeal. (*Id.* at Page ID 303).

There is no dispute that Penman and Attorney Merritt discussed the possibility of appealing his sentence prior to the Court's Judgment. Also, there is no dispute that Penman did not advise Attorney Merritt that he wanted to appeal <u>after</u> the Court's Judgment. Thus, it is clear from the record that Penman did not give instructions to Attorney Merritt to appeal the Judgment.

The next question the Court must answer is whether Penman's presentence statement that he wanted to appeal any sentence that was not in line with what Attorney Merritt had planned was sufficient to trigger the obligation to file a notice of appeal. Even assuming everything Penman states is true, it was not.

Attorney Merritt's "plan," as set forth in her Affidavit, was to obtain a sentence at the low end of the Guidelines range of 77 months "with a portion of that time in community confinement so that [Penman could] establish treatment providers prior to his release." (R. 50-1 at Page ID 300). The Court imposed a sentence of 72 months and included 6 months in "a community confinement facility" "upon release from the custody of the U.S. Bureau of Prisons," immediately as he begins his 3-year term of supervised release. (R. 50-2 at Page ID 307, 310). Therefore, the sentence was in keeping with Attorney Merritt's plan, and Penman's presentence statement to "appeal any decision other than the decision she had planned" did not constitute "specific instructions . . . to file a notice of appeal." *Flores-Ortega,* 528 U.S. at 477.

However, the analysis cannot stop there because Penman also states that Attorney Merritt did not consult him regarding an appeal after the Judgment. (R. 38-1 at Page ID 152). For ineffective assistance of counsel claims involving alleged failure to consult regarding an appeal, "the court must . . . ask . . . whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478. However, failure to consult with a defendant regarding appeal is not "necessarily unreasonable, and therefore deficient." *Id.* at 479. The constitutionally imposed duty to consult with a defendant about an appeal arises "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known." *Id.* at 480. Furthermore, in cases involving a plea, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* Based on the preceding, Penman's argument

11

that Attorney Merritt was required to consult with him regarding appeal is without merit for several reasons.

First, the Plea Agreement stated that Penman faced imprisonment of not more than ten years followed by a maximum of three years of supervision following his release from prison. (R. 19 at Page ID 47). The parties agreed that, under the Sentencing Guidelines, Penman had committed a base level 24 offense and that the United States would recommend a two-level decrease for acceptance of responsibility and, if appropriate, an additional one-level decrease for Penman's "timely notice of intent to plead guilty." (*Id*. at Page ID 48). Penman received the requested reductions set forth in the Plea Agreement. Therefore, his sentence fell within the bargained for parameters of that Agreement.

Second, Attorney Merritt knew that Penman wanted a sentence at the low end of the Guidelines range and that he wanted a portion of that sentence to include a period of community confinement. (R. 501-1 at Page ID 300). The sentence imposed by the Court was consistent with Penman's wishes and what Attorney Merritt knew. A rational defendant would not want to appeal a sentence in keeping with his specifications.

Third, Penman did not file a reply and has not otherwise disputed Attorney Merritt's statement in her Affidavit that, after the sentencing hearing, he said he was "'good' with the sentence" and that "if he changed his mind" he should contact her. (R. 50-1 at Page ID 302). Thus, Penman never demonstrated to Attorney Merritt, reasonably or otherwise, that he wanted to appeal the sentence he ultimately received.

Fourth, Penman has never stated that he would have appealed his sentence or the grounds he would have had for doing so. "If [a] defendant cannot demonstrate that, but for counsel's

12

deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Flores-Ortega*, 528 U.S. at 484.

Finally, Penman's real complaint appears to be that because Attorney Merritt did not file a notice of appeal, he was foreclosed from asserting his jurisdiction argument on appeal. While "[s]ubject-matter jurisdiction can never be waived or forfeited," *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), based on *Hobbs* and *Watson,* any *Rehaif*-based appeal was doomed on the merits. Furthermore, although Penman couches his *Rehaif* argument as a jurisdictional one, as the Sixth Circuit made clear, failure to include categorical knowledge is not jurisdictional. *Hobbs,* 953 F.3d at 856-57. Therefore, an appeal on that basis would have been a non-jurisdictional appeal of his conviction, the right to which Penman waived. Likewise, Penman's argument that his Indictment and conviction should be dismissed via this proceeding is also non-jurisdictional and is barred by Penman's waiver of collateral attack on his conviction.

For the foregoing reasons, ground one of Penman's § 2255 Motion is also without merit, and it will be recommended that he be denied the relief he seeks under that ground.

### III.     CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate

13

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.  When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Penman's § 2255 Motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Accordingly, it also will be recommended that a certificate of appealability be denied upon the entry of a final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated above, **IT IS RECOMMENDED** that:

1)    Penman's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 34) **be denied;**

2)    a Certificate of Appealability **be denied** in conjunction with the entry of a final order denying Penman's § 2255 Motion;

3)    Judgment in favor of the United States **be entered** contemporaneously with the entry of a final order denying Penman's § 2255 Motion; and,

4)    Penman's collateral civil proceeding **be dismissed and stricken** from the active docket of this Court.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  *See also*

14

Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 18th day of August, 2023.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\habeas petitions\2255 IAC\19-66-GFVT Penman R&R.55kk.docx